UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLOM ASA

                              Plaintiff,

                                                                                                   <u>DECISION AND ORDER</u>

                                                                                                                          10-CV-6607L

                              v.

PICTOMETRY INTERNATIONAL CORP.,


                              Defendant.
_____

## INTRODUCTION

On October 27, 2010, Blom ASA ("Blom") filed in this Court a petition for injunctive relief pending arbitration ("petition") (Dkt. #1), along with a motion for a preliminary injunction (Dkt. #3). Blom and respondent Pictometry International Corp. ("Pictometry") are engaged in a dispute involving a contract between them concerning Pictometry's licensing to Blom of certain technology created by Pictometry. Pursuant to the terms of that contract, Blom has filed a request for arbitration with the International Chamber of Commerce ("ICC"), asserting claims for breach of contract against Pictometry.

Blom's motion in this Court seeks an order enjoining Pictometry from engaging in certain actions, and directing Pictometry to perform certain acts, pending the outcome of the parties' arbitration before the ICC. Pictometry has filed a cross-motion (Dkt. #18) preliminarily enjoining

Blom from continuing to use, or transferring, Pictometry's technology, also pending arbitration. The Court heard oral argument on the motions on November 12, 2010.[1]

**BACKGROUND**

Blom is a Norwegian corporation that provides its customers with geographic mapping and imagery services. Pictometry, a Delaware corporation with its principal place of business in Rochester, New York, owns certain patented technology that can be used to create aerial mapping images. That technology uses five digital cameras mounted in an aircraft to create "oblique" ground images with a three-dimensional view. Pictometry has licensed that technology to a number of users, including Blom, as well as software that allows users to view and manipulate those oblique images.

In January 2009, Blom and Pictometry entered into an agreement ("License Agreement"), which consolidated three prior agreements that Pictometry had entered into in 2005 with Blom and two other corporations that Blom later acquired. Under that agreement, Pictometry granted to Blom an exclusive, non-transferable license to use Pictometry's technology within a defined geographic area in Europe. In exchange, Blom agreed to pay Pictometry license fees and royalties. The license was for a nine-year term, ending in 2018.

The License Agreement also provided that in the event of a dispute between the parties, the dispute would be settled by an arbitration panel in London, England, under the Rules of Conciliation and Arbitration of the ICC ("ICC Rules"). Dkt. #3-3 at 35. Under Article 23 of the ICC Rules, "as

---

[1]At the conclusion of oral argument, the Court directed the parties to work together to attempt to agree upon some mutually satisfactory interim relief pending arbitration. By separate letters to the Court dated November 22, 2010, the attorneys for both sides indicated that the parties had been unable, or unwilling, to reach such an agreement.

soon as the file has been transmitted to it, the Arbitral Tribunal may, at the request of a party, order any interim or conservatory measure it deems appropriate."[2]

The License Agreement further provided that "[n]otwithstanding the foregoing, nothing in this license agreement shall be construed as precluding either Party from seeking injunctive relief from any U.S. court of competent jurisdiction in the State of New York in the event the nature of the dispute will or could give rise to irreparable injury." *Id.* Likewise, Article 23 of the ICC Rules provides that

> [b]efore the file is transmitted to the Arbitral Tribunal, and in appropriate circumstances even thereafter, the parties may apply to any competent judicial authority for interim or conservatory measures. The application of a party to a judicial authority for such measures or for the implementation of any such measures ordered by an Arbitral Tribunal shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the Arbitral Tribunal.

In February 2010, Blom entered into a "Cooperation Agreement" with Infoterra Limited, an English corporation that is described in the petition as "a leading provider of geographic image solutions," Petition ¶ 21, whereby they agreed to jointly combine and market each other's products within Europe, "to establish a consolidated European and global dataset by combining Infoterra's global high-resolution satellite imagery with Blom's extensive archive of airborne imagery and three-dimensional city models." Petition ¶ 23. It is this agreement that has caused the rift between Blom and Pictometry.

By letter dated October 18, 2010, Pictometry gave Blom written notice that Pictometry was terminating the License Agreement effective immediately, with no opportunity to cure. Dkt. #3-3 at 41. The letter stated that Blom's execution of the Cooperation Agreement with Infoterra had breached several provisions of the Licensing Agreement, including: § 2.1, granting Blom an exclusive non-transferable license, without the right to sublicense, Pictometry's technology in Europe; § 4.1, granting Blom a license to use Pictometry's licensed trademarks, without the right to

---

[2]The ICC Rules are available on the ICC's website at http://www.iccwbo.org/court/arbitration/id4199/index.html.

sublicense; and § 14.3.1, prohibiting Blom from delegating its duties under the licensing agreement without the prior written consent of Pictometry.

Blom responded to Pictometry by letter the following day, insisting that Blom had "in no way been in breach" of the Licensing Agreement, and alleging that Pictometry's "unlawful termination" of the Licensing Agreement was itself a breach of that agreement. Dkt. #3-3 at 44, 45.

On October 25, 2010, Blom filed a request for arbitration with the ICC, alleging that Pictometry had wrongfully terminated the License Agreement. Blom filed its petition and injunction motion in this Court two days later. Blom seeks an order enjoining Pictometry from "dishonoring its contractual obligations and commitments" under the Licensing Agreement, "denying Blom's license, rights and privileges under the License Agreement," soliciting Blom's customers or making false disparaging statements about Blom, and making false or misleading statements to the effect that Pictometry has any rights to digital images captured or produced by Blom. Dkt. #1 ¶ 1.

Pictometry filed its cross-motion on November 8, 2010. Pictometry seeks an order preliminarily enjoining Blom from selling and using Pictometry technology and products, or competing with Pictometry, pending the completion of the ICC arbitration proceeding. Dkt. #18.

**DISCUSSION**

**I. Preliminary Injunctive Relief: General Standards**

To obtain a preliminary injunction, the moving party must establish (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party. *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009), *cert. denied*, 131 S.Ct. 415 (2010). *Accord 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406 (2d Cir.), *cert. denied*, 546 U.S. 1033 (2005). Whether to grant or deny a preliminary injunction under these standards lies within the sound discretion of the district court. *S.C. Johnson & Son, Inc.*

*v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir. 2001); *P & G v. Ultreo, Inc.*, 574 F.Supp.2d 339 (S.D.N.Y. 2008).

**II. Injunctive Relief Pending Arbitration**

The Court of Appeals for the Second Circuit has given "explicit and broad recognition to a district court's power to grant preliminary injunctive relief pending arbitration ... ." *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052 (2d Cir. 1990) (citing *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984)). The court has stated that the "pro-arbitration" policies that have been endorsed by the Supreme Court "are furthered ... by a rule permitting a district court to preserve the meaningfulness of the arbitration through a preliminary injunction." *Id.* at 1053. As the court explained, "[a]rbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute. A district court must ensure that the parties get what they bargained for–a meaningful arbitration of the dispute." *Id. See also American Exp. Financial Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998) ("In many instances, it is by freezing the status quo that the meaningfulness of arbitration is best protected").

Applying those same principles, the Ninth Circuit has recently held that a district court had the power to grant injunctive relief to maintain the status quo pending arbitration before the ICC. In *Toyo Tire Holdings v. Continental Tire North America*, 609 F.3d 975 (9th Cir. 2010), the district court had denied the plaintiff's motion for a preliminary injunction, based on the court's conclusion that prior Ninth Circuit precedent barred the court from granting injunctive relief when the parties had agreed to arbitrate and the arbitration panel had the power to issue injunctive relief.

Reversing the district court's deciision, the Ninth Circuit, noting that the plaintiff Toyo sought "an injunction to preserve the status quo until the arbitral panel can consider and rule upon Toyo's application for interim relief pending the arbitration panel's final decision," held that "[a]llowing a district court to grant this type of relief is not contrary to the 'emphatic federal policy

in favor of arbitral dispute resolution' ... . To the contrary, in cases such as this, judicial interim relief may be necessary to preserve the meaningfulness of the arbitral process." *Id.* at 980 (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999)).

Echoing the Second Circuit's statements in *Blumenthal*, the Ninth Circuit pointed out that preliminary injunctive relief may be appropriate to prevent the arbitral process from becoming an empty formality, noting that "one party to the arbitration often has an incentive to delay arbitration proceedings to its own advantage," and that as a consequence, "the unavailability of interim conservatory measures can frustrate the arbitration process." *Id.* at 981. The court therefore "conclude[d] that a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process–provided, of course, that the requirements for granting injunctive relief are otherwise satisfied." *Id.* That holding, the court added, was "consistent with ... the holdings of a majority of our sister circuits." *Id.* (citing *Blumenthal*, 910 F.2d at 1052-54) (additional citations omitted). *See also Puerto Rico Hosp. Supply, Inc. v. Boston Scientfic Corp.*, 426 F.3d 503, 505 (1st Cir. 2005) (noting that "[a] district court has jurisdiction to issue preliminary injunctions to preserve the status quo pending arbitration," and that "the ICC rules ... allow either the arbitrator or 'any competent judicial authority' to issue interim relief").

Because "the limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held,'" *Schreier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)), the court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.*, the situation that existed between the parties immediately prior to the events that precipitated the dispute. The "'[s]tatus quo' to be preserved by a preliminary injunction is the last actual, peaceable uncontested status which preceded the pending controversy." *LaRouche v. Kezer*, 20 F.3d 68, 74 n.7 (2d Cir. 1994) (quoting Black's Law Dictionary 1410 (6th ed. 1990)). *See also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir.

2004) ("'Status quo' does not mean the situation existing at the moment the law suit is filed, but the last peaceable uncontested status existing between the parties before the dispute developed. Thus, courts of equity have long issued preliminary injunctions requiring parties to restore the status quo ante") (McConnell, J., concurring) (internal quote omitted), *aff'd and remanded*, 546 U.S. 418 (2006); *United Steelworkers of Am., AFL-CIO v. Textron, Inc.*, 836 F.2d 6, 10 (1st Cir. 1987) (concluding that an injunction requiring the payment of insurance premiums was properly viewed "not as mandatory, but as prohibitory" where the last uncontested status that preceded the pending controversy was a status in which the defendant paid the necessary premiums) (Breyer, J.).

**III. Application to this Case**

Applying these principles to the case at bar, I conclude that the most appropriate remedy here is an injunction that as closely as possible restores the parties to their status prior to the genesis of this dispute, which was precipitated by the Cooperation Agreement between Blom and Infoterra. Although Pictometry now contends that Blom's alleged breach "was the culmination of many years of Pictometry's growing distrust of Blom resulting from repeated conduct by Blom in violation of the [Licensing Agreement]," *see* Nov. 22, 2010 Letter from Defendant's Counsel to the Court, the fact is that the parties here had a continuous contractual relationship from 2005 until October 2010, when that relationship was abruptly terminated by Pictometry because of Blom's Cooperation Agreement with Infoterra. An appropriate injunction, then, is one that restores and preserves the status quo as it existed prior to Blom's and Infoterra's entering into the Cooperation Agreement, and which requires Pictometry to continue to perform under the Licensing Agreement. *Cf. Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963) (holding that district court's issuance of preliminary injunction in favor of defendant Avis, which had terminated parties' licensing agreement, was abuse of discretion, and noting that the status quo ante was that plaintiff "Tanner was, and had been for many years, an Avis licensee," that "Tanner was endeavoring to continue to so operate," that "Avis sought to change that status," and that the district court's preliminary

injunction order improperly allowed Avis to change the status quo pending the outcome of a trial on the merits).

I also note that an injunction need not be wholly one-sided, *i.e.*, directed solely for or against only one side or the other in a case, and that there is authority for a court granting injunctive relief as to both sides of a dispute, particularly where the purpose of the injunction is to maintain the parties' contractual relationship pending a final decision on the merits. In *Bill's Coal Co., Inc. v. Board of Public Utilities of Springfield, Bill's Coal Co., Inc. v. Board of Public Utilities of Springfield, Missouri*, 682 F.2d 883 (10th Cir. 1982), for example, the Court of Appeals for the Tenth Circuit reversed an order dissolving a preliminary injunction, and directed the reinstatement of the injunction, which had required both parties to perform under their contract pending a trial and final determination of the parties' claims. *See also Blue Cross Blue Shield of Michigan v. Medimpact Healthcare Systems, Inc.*, No. 09-14260, 2010 WL 2595340, at *1 (E.D.Mich. June 24, 2010) (stating that court had previously enjoined both parties to continue performing under contract pending arbitration).

Such a result is also consistent with the purpose of an injunction in aid of arbitration, particularly where both parties have changed their behavior, or otherwise altered the status quo, since the last peaceable uncontested status. As explained, the point of such an injunction is to restore the status quo ante, so that arbitration can remain a meaningful exercise. *See Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966) (noting that courts have granted preliminary injnctive relief where "the injunction creates a common sense modus vivendi to keep peace between the contracting parties, and avoids unnecessary economic waste until the case is adjudicated") (quoted in *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir.1984)). To effect that result here, it is necessary to require both parties to return to the status that they occupied prior to Blom's Cooperation Agreement with Infoterra.

It also remains necessary, of course, to determine whether the basic standards for the issuance of injunctive relief have been met. In that regard, I find that both sides here have demonstrated their entitlement to preliminary injunctive relief.

With respect to the issue of irreparable harm, Blom argues that its business will be severely disrupted if it is unable to continue to use Pictometry's technology, primarily because it will be unable to update its image libraries without that technology. Blom will therefore not be in a position to attract new customers or to renew existing customers' software licenses. Because of the importance in this industry of up-to-date images, Blom stands to lose customer goodwill, as well as actual customers, who may take their business to other mapping service providers. Such consequences can qualify as irreparable injury. *See Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005) ("An anticipated loss of market share growth may suffice as an irreparable harm"); *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 404 (2d Cir. 2004) (district court did not abuse its discretion in finding that, unless specific relief to enforce terms of contract were granted, defendant's actions would cause plaintiff irreparable harm through loss of reputation, good will, and business opportunities); *Tom Doherty Assoc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 37-38 (2d Cir.1995) (noting that "a loss of prospective goodwill can constitute irreparable harm").

Contrary to Pictometry's arguments, it is not necessary for Blom to show that its business would effectively be destroyed in the absence of an injunction. "Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury. Upon such a showing, plaintiffs may be entitled to injunctive relief." *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995). Blom has made such a showing here.

I also note that what Blom is seeking here is, in effect, specific performance of the parties' contract, pending the outcome of arbitration. "[T]he rule seems to be fairly established that where a party's request for a status quo injunction pending arbitration is grounded in the words of a contract, specific performance analysis is required.." *Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 434 (2d Cir. 1993). "The test for specific performance is more flexible" than

the traditional test for preliminary injunctive relief," and "initially requires proof that (1) a valid contract exists between the parties, (2) the plaintiff has substantially performed its part of the contract, and (3) plaintiff and defendant are each able to continue performing their parts of the agreement." *Id.* at 433. The "party seeking relief must show equitable factors in its favor, for example, the lack of an adequate remedy at law, and must also demonstrate that its risk of injury, if the injunction is denied, is one that after balancing the equities entitles it to relief. One of the factors balanced is irreparable harm, a common element under both tests." *Id.* (citation omitted). Again, the Court finds that Blom has met that standard.

For its part, Pictometry contends that pursuant to the Cooperation Agreement between Blom and Infoterra, Infoterra is selling Pictometry products to end users. Pictometry argues that if Infoterra is selling those products with Pictometry's trademark, that is a violation of Pictometry's Licensing Agreement with Blom, and that Infoterra is falsely holding itself out as a Pictometry licensee. If Infoterra is selling Pictometry products without Pictometry's trademark, then Infoterra is falsely holding out Pictometry's products as its own.

Pictometry further argues that Blom has had access to numerous Pictometry trade secrets and proprietary information, and that it appears from the Cooperation Agreement that Blom has or will disclose some of that information to Infoterra. Pictometry notes that the Cooperation Agreement provides that Blom will give "full disclosure to Infoterra of all background information with regards to products or technology associated therewith." Dkt. #7-1 at 17, § 24.1. "Background information" is defined as "any and all information, including know-how, whether protected or protectable by any intellectual property or not ... which any party owns or is licensed thereof before signature of the agreement ... ." *Id.* at 3, § 1.3. Blom's disclosure of that information to Infoterra, Pictometry contends, would both violate the terms of the Licensing Agreement and irreparably harm Pictometry.

Although the Second Circuit has recently made clear that courts should not presume the existence of irreparable harm in intellectual-property cases, *see Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010), I agree with Pictometry that, should it prevail in the arbitration proceeding, monetary

damages could be inadequate to compensate for the threatened injury here. *See id.* (court must consider whether the "remedies available at law, such as monetary damages, are inadequate to compensate for th[e] injury") (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).³ The unauthorized use, or failure to use Pictometry's trademark, in violation of the Licensing Agreement, as well as the risk of unauthorized disclosure and possible dissemination of Pictometry's trade secrets, is sufficient to give rise to a showing of irreparable harm supporting preliminary injunctive relief. *See Cold Stone Creamery, Inc. v. Gorman*, 361 Fed.Appx. 282, 286-87 (2d Cir. 2010) (evidence that defendant was prohibited from selling rights to use plaintiff's trademarked property after plaintiff terminated franchise and lease agreements, but did so in violation of those agreements, demonstrated that plaintiff would likely suffer irreparable injury in the absence of an injunction). *See also Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118-19 (2d Cir. 2009) ("A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets").

Blom denies that it has or is going to divulge any of Pictometry's trade secrets to Infoterra, or that it has otherwise breached the Licensing Agreement. The issue of whether Blom or Pictometry is in breach of their agreement relates to the merits of the parties' claims, and in light of the posture of this case, the Court declines to delve into the merits, other than to find that there are sufficiently

---

³*Salinger* was a copyright case, and the Supreme Court *eBay* decision upon which it relied was a patent case. While neither the Supreme Court nor the Second Circuit has yet stated whether the rule enunciated in those cases applies to trademark disputes, "[t]he Second Circuit's admonition that a court 'must not adopt a "categorical" or "general" rule or presume that the plaintiff will suffer irreparable harm,' is as applicable to trademark as copyright. It would be illogical if trademark was the only intellectual property regime holding harm inherent in a *prima facie* case of infringement." *People's United Bank v. Peoplesbank*, No. 3:08cv01858, 2010 WL 2521069, at *3 (D.Conn. June 17, 2010). *See also New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F.Supp.2d 305, 328 (S.D.N.Y. 2010) ("The Court can think of no reason why the standards for injunctive relief articulated by the High Court in a copyright infringement case [*i.e.*, *eBay*] might not apply in a trademark infringement case").

serious questions going to the merits of both sides' claims to make them fair ground for litigation. By contract, the parties have determined not to have a judicial forum for resolution of disputes. The parties have chosen to arbitrate their claims before a panel selected under the ICC Rules, and there is no dispute here that such arbitration is proper and is provided for by the Licensing Agreement. This case therefore stands on a different footing from cases in which a court is asked to issue a preliminary injunction pending a final determination of the parties' claims *by the court*. Just as the Court here must seek to preserve the status quo ante, to prevent either party from taking steps that would vitiate the arbitral process, so it would be inappropriate for the Court to reach any conclusions concerning the merits of each side's claims, before those claims have been submitted to the arbitration panel that will ultimately decide them. *See Nemer Jeep-Eagle*, 992 F.2d at 434-35 ("a request for a status quo injunction pending arbitration does not require examination of the merits of the underlying disputes"); *see also Peabody Coalsales Co. v. Tampa Elec. Co.*, 36 F.3d 46, 48 and n.7 (8th Cir. 1994) (noting the "court's heightened concern with avoiding the merits of the underlying dispute," and stating that "[t]he merits are properly left to the arbitrators" to decide). This Court's role is to maintain the status quo so that the remedy of arbitration is meaningful.

I conclude, therefore, that an injunction should issue in this case, requiring both parties to continue to perform under the Licensing Agreement, and enjoining Blom from performing under the Cooperation Agreement with Infoterra. The terms of that injunction are set forth in the Conclusion to this Decision and Order.

**IV. Posting of a Bond**

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." This rule "gives the

district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm ... ." *Corning Inc. v. PicVue Electronics, Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)).

Having considered the matter, I conclude that no bond is called for here. Since the injunction does no more than preserve the preexisting status quo, in which the parties were engaged in an ongoing contractual relationship (which presumably was mutually beneficial to them), there is little risk of significant harm to either side, particularly since they may seek additional or different conservatory relief from the ICC panel, as explained in the Conclusion to this Decision and Order, *infra*. In addition, both parties appear to be fully solvent, and there is no indication in the record that either of them would be unable to satisfy an award of damages if it is later determined that the other party was wrongfully enjoined. I will therefore not require the posting of a bond by either side.

## CONCLUSION

The motions for preliminary injunctions filed by plaintiff Blom ASA (Dkt. #3) and defendant Pictometry International Corp. (Dkt. #18) are both granted in part and denied in part.

Pictometry International Corp. ("Pictometry") is hereby preliminarily enjoined from (1) dishonoring its contractual obligations and commitments under the parties' Amended and Restated Technology License Agreement that became effective on January 29, 2009 ("License Agreement"), and (2) denying Blom ASA's license, rights and privileges under the License Agreement. This Order does not limit or affect Pictometry's contractual or legal rights or remedies with respect to any breaches of the License Agreement by Blom ASA that may occur after the issuance of this Decision and Order.

Blom ASA is hereby enjoined from performing under the Cooperation Agreement entered into by Blom ASA and Infoterra Limited on February 15, 2010. This Order does not preclude Blom

ASA from performing under any currently existing contracts between it and Infoterra that were in force prior to February 15, 2010, to the extent that Blom ASA's performance under such contracts is not inconsistent with its obligations under the License Agreement.

This injunction shall remain in effect until further order of this Court, without prejudice to the parties seeking additional or other conservatory relief from the ICC arbitration panel. The parties have selected the ICC as their chosen forum and there is no good reason why that body should not entertain whatever application is made for conservatory relief. Upon the issuance of an order by the ICC arbitration panel granting such relief, the parties may return to this Court to seek a modification of this Order, to conform to the relief granted by the ICC arbitration panel.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       December 2, 2010.